**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEYSTONE REDEVELOPMENT PARTNERS, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No 08-2265 |
| | : | |
| THOMAS DECKER, MARY DIGIACOMO COLINS, RAYMOND S. ANGELI, JEFFREY W. COY, JOSEPH W. MARSHALL, III, KENNETH T. MCCABE, and SANFORD RIVERS, all named in their individual capacities as members of the Pennsylvania Gaming Control Board in December 2006; and MARY DIGIACOMO COLINS, RAYMOND S. ANGELI, JEFFREY W. COY,  JAMES B. GINTY, KENNETH T. MCCABE, SANFORD RIVERS, and GARY A. SOJKA, all named in their official capacities as current members of the Pennsylvania Gaming Control Board, | : : : : : : : : : : : : : : | Hon. John E. Jones III  [Electronically Filed] |
| Defendants, | : | |
| and | : | |
| | : | |
| HSP GAMING, L.P., | : | |
| | : | |
| Intervenor-Defendants. | : | |

-------------------

## AMENDED COMPLAINT

-------------------

Plaintiff, Keystone Redevelopment Partners, LLC ("Keystone"), for its

amended complaint, states:

1.     Keystone seeks declaratory, injunctive and monetary relief against the above-named defendants in connection with past and ongoing violations of rights secured by the United States Constitution.

2.     Defendants, to the extent named in their individual capacities as members of the Pennsylvania Gaming Control Board ("PGCB") in December 2006, violated Article I, Section 8 (the "Commerce Clause") of, and the right to equal protection of the laws secured by, the United States Constitution, in connection with their denial of Keystone's application for a Category 2 slot machine license.

3.     Defendants, to the extent named in their individual capacities, violated clearly established law when they knowingly discriminated against, and imposed an undue burden on, interstate commerce, and also denied Keystone its right to equal protection of the law, in connection with their rejection of Keystone's application on the grounds that entities affiliated with Keystone operate casinos in Atlantic City, New Jersey.

4.     Defendants, to the extent named in their official capacities as current members of the PGCB, are being sued to prevent ongoing violations of the Commerce Clause and the First and Fourteenth Amendments to the United States Constitution in connection with a separate proceeding, and such further

proceedings as are necessary, before the PGCB by which Keystone, among other things, seeks or will seek a Category 2 slot machine license.

5. Unless enjoined by this Court, defendants, to the extent named in their official capacities, in connection with proceedings before the PGCB will continue to violate the Commerce Clause and the Fourteenth Amendment to the United States Constitution, and will apply and enforce the unconstitutional provision of Section 1308(c) of the Pennsylvania Race Horse Development and Gaming Act ("Gaming Act"), which purports to require the PGCB to reject any application submitted to it by a person or entity that has otherwise exercised its constitutional right to seek redress from the courts, in violation of the First and Fourteenth Amendments to the United States Constitution.

**Parties**

6. Keystone is a limited liability company organized and existing under the laws of the State of Delaware and is qualified to do business in Pennsylvania.

7. Thomas Decker, Mary DiGiacomo Colins, Raymond S. Angeli, Jeffrey W. Coy, Joseph W. Marshall, III, Kenneth T. McCabe, and Sanford Rivers (the "Individual Defendants") were the members of the PGCB who, acting under of state law, previously denied Keystone's application for a Category 2 slot machine license.

8.     Defendants Mary DiGiacomo Colins, Raymond S. Angeli, Jeffrey W. Coy, James B. Ginty, Kenneth T. McCabe, Sanford Rivers, and Gary A. Sojka (the "Official Defendants") are the current members of the PGCB and are being sued in their official capacities to prevent ongoing violations of the United States Constitution.

## Jurisdiction and Venue

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1367.

10.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant the declaratory relief sought herein.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because one or more of the defendants resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

## Factual Background

12.     The Pennsylvania Race Horse Development and Gaming Act ("Gaming Act") authorizes the PGCB to issue slot machine licenses, establishes criteria for the issuance of the licenses, and limits to two the number of such licenses that may be issued for casinos in the City of Philadelphia.

13.     Keystone was one of five entities that, in or about December 2005, submitted applications to the PGCB for one of two Category 2 slot machine licenses in the City of Philadelphia.

14.     The PGCB determined that Keystone has satisfied all of the eligibility, suitability, financial fitness and other requirements for licensure imposed by the Gaming Act.

15.     Keystone spent more than $10.0 million, including fees and other payments to the PGCB, in connection with its license application and in a good faith effort to meet the requirements of the Gaming Act.

16.     The PGCB, after considering the submissions before it, found that Keystone had submitted a "solid, competent proposal," and that Keystone was therefore "eligible and suitable for licensure under the terms of the Act."

17.     The PGCB and the Individual Defendants, by a decision made in December 2006 and an associated written statement issued in February 2007, nevertheless denied Keystone's application and granted the licenses to two other applicants.

18.     The PGCB and the Individual Defendants adopted a licensing criterion and applied that licensing criterion in connection with their decision to deny Keystone's application and in connection with other licensing proceedings. That licensing criterion, which was and will again be applied to Keystone by the

Defendants, impermissibly discriminates against and unduly burdens interstate commerce and also has no rational relationship to any legitimate governmental interest

19.     The Defendants did not inform Keystone, until after its application was submitted, millions of dollars spent, hearings held and concluded, a determination rendered and issuance of a final written decision that Defendants had adopted and would apply the forgoing licensing criterion.  Keystone therefore was denied an opportunity to evaluate whether to proceed with an application for a gaming license in Pennsylvania in light of this criterion.

20.     The licensing criterion described above, which was and will again be applied to Keystone by the Defendants, creates classifications by which similarly situated persons are not treated alike for purposes of licensing proceedings.  The classifications discriminate against applicants affiliated with out-of-state entities and do not serve a legitimate government purpose.

21.     In the alternative, the Gaming Act, as was and will be applied to Keystone by the Defendants, discriminates against and unduly burdens interstate commerce for the sole purpose of erecting a protectionist barrier around Pennsylvania and, as so applied, has no rational relation to any legitimate government objective

22.     The PGCB and the Individual Defendants applied the Gaming Act, adopted the licensing criterion described above and rejected Keystone's application, thus causing the licenses to be awarded to competing entities, for the purpose of, and with the practical effect being to, discriminate against and unduly burden interstate commerce.

23.     Defendants, by the actions described herein, discriminated against interstate commerce by preventing entities with out-of-state gaming operations from investing in and developing gaming operations in Pennsylvania and by erecting a protectionist barrier between Pennsylvania and New Jersey to impede citizens of Pennsylvania, and other visitors to gaming operations in Pennsylvania, from being encouraged to do business with, and from doing business with, gaming operations in New Jersey.

24.     Defendants' actions as described herein were taken for the avowed purpose of discriminating against interstate commerce by preventing a Pennsylvania license from being used to generate economic opportunities outside of the state to the detriment of local markets.

25.     The sole object of Defendants' discriminatory actions as described herein was and is local economic protectionism.

26.     The Individual Defendants disqualified Keystone from receiving a license due to the fact that affiliates of Keystone operate casinos in Atlantic City, New Jersey.

27.     The Individual Defendants, and the PGCB, intending to insulate casinos in Pennsylvania from lawful competition from out-of-state competitors while discouraging Pennsylvania residents from visiting out-of-state casinos and in order to otherwise erect a protectionist barrier to interstate commerce, unlawfully used the fact that affiliates of Keystone have existing casino operations in Atlantic City, New Jersey as a determinative "negative factor" in their executive decision on licensing.

28.     The Individual Defendants denied Keystone's application, having concluded, with no basis in fact, that, if they were to grant Keystone a license, Keystone might "lure" its Philadelphia customers to the Atlantic City, New Jersey operations of Keystone's affiliates.

29.     By contrast, the Individual Defendants noted with approval that the competing entities to which they awarded licenses did not operate casinos in Atlantic City.

30.     The Individual Defendants, and the PGCB, thus penalized Keystone based on the fact that affiliates of Keystone operate casinos in Atlantic City and that, as a result, in their opinion, awarding a license to Keystone might ultimately

result in persons who might otherwise visit casinos in Philadelphia choosing to visit casinos in Atlantic City.

31. The Individual Defendants, and the PGCB, took the actions described above despite finding that, if awarded a license, "Keystone was likely to maintain a financially successful, viable and efficient business operation which would have maintained a steady level of growth and revenue."

32. The Individual Defendants and the PGCB, by awarding licenses based on a discriminatory criterion, intended to protect the Philadelphia gaming market and impair interstate commerce. This discrimination and disparate treatment provides an unfair and unlawful advantage to the class of applicants who are not affiliated or associated with casinos located in Atlantic City, New Jersey.

33. The actions of the Individual Defendants and the PGCB discriminate against the class of applicants who are affiliated with entities that engage in lawful businesses in Atlantic City, New Jersey, a class of which Keystone is a member.

34. When they adopted the unlawful licensing criterion, applied the Gaming Act and took the other actions otherwise described above, the Individual Defendants were not acting in a quasi-judicial manner. Their role, in connection with the adoption and application of the unlawful licensing criterion, was not functionally comparable to that of a judge.

35.     During the proceedings leading up to their denial of Keystone's application, the Individual Defendants did not act as a detached and neutral decision-making body considering adversarial presentations by parties before them.  Instead, the Individual Defendants engaged in an open-ended inquiry free from the constraints of a judicial, or quasi-judicial, proceeding.

36.     The proceedings before the Individual Defendants were not conducted like an adjudicatory proceeding before an agency tribunal or administrative law judge.

37.     The Individual Defendants, rather than act in a quasi-judicial manner and consider testimony elicited by parties, conducted their own inquiries and questioning.  The Individual Defendants and persons acting at their direction acted as both advocates and decision makers when, among other things, they both moved the admission of exhibits and then voted on the admission of same.

38.     The Individual Defendants, when conducting fact finding, considered evidence that they, or persons acting at their direction, collected through investigations conducted outside of open proceedings and outside of the presence of the parties.

39.     The Individual Defendants, when conducting fact finding, did not apply rules of evidence or otherwise limit the consideration of hearsay testimony or unauthenticated documents.  The applicants before the PGCB did not have a

reasonable opportunity to test the veracity of the evidence considered by the PGCB.

40.     The parties appearing before the Individual Defendants did not have an absolute right to compel attendance of witnesses or to engage in prehearing discovery.  Nor were the persons who appeared before the Board subject to cross-examination by competing applicants or their representatives.

41.     The Individual Defendants, when they denied Keystone's application, did not rely on precedent or past licensing decisions.  The Individual Defendants, instead, applying an open-ended range of non-exclusive factors, conducted an unbounded inquiry and exercised policy making discretion in connection with their development and application of licensing criteria.

42.     The Individual Defendants, when they acted under the Gaming Act and adopted and applied the discriminatory licensing criterion described above and thereby denied Keystone's application, violated clearly established law.

43.     When they adopted and applied a protectionist licensing criterion for the purpose of erecting, and that does erect, a protectionist barrier around Pennsylvania gaming operations, and when they applied discriminatory classifications that are not rationally related to serving legitimate governmental objective, the Individual Defendants violated clearly established constitutional rights of which a reasonable person would have known.

44.     The Individual Defendants have not acted as members of a disinterested tribunal.   For example, the PGCB acted as a litigant and sought a bond when another applicant appealed the PGCB's decision.  (See Attachment "A").

45.     As a result of the actions of the Individual Defendants described above, Keystone suffered substantial losses including amounts paid to the PGCB as well as amounts spent preparing and submitting its application.

46.     Keystone has commenced a proceeding before the PGCB seeking, among other things, a category 2 slot machine license for the City of Philadelphia.

47.     If not enjoined by this Court, the PGCB, intending to maintain a protectionist barrier around Pennsylvania, will continue to apply the Gaming Act in the manner set forth above, will continue to apply and follow its discriminatory licensing criterion and will again unlawfully discriminate against Keystone in connection with the proceeding now before the PGCB as a result of Keystone's affiliation with entities operating casinos in New Jersey.

48.     The PGCB's conduct, as described above, is continuing and ongoing to this date in that, among other things, the PGCB has continued to, and is expected to continue to, promote and protect the previously awarded licenses to entities that are not affiliated or associated with a casino in Atlantic City and to

deny Keystone's reopened application due to the fact that affiliates of Keystone operate casinos in New Jersey.

49.     An actual dispute and controversy exists between Keystone and the PGCB, acting by the Official Defendants, which parties have genuine and opposing interests, which interests are direct and substantial, and of which a judicial determination will be final and conclusive.

## COUNT I
### (Against Individual Defendants - Commerce Clause)

50.     The foregoing paragraphs 1-49 are incorporated by reference.

51.     The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from state action that violates the Commerce Clause, Article I, Section 8 of the United States Constitution.

52.     In denying Keystone's application, the Individual Defendants followed their policy of applying the Gaming Act so as to impose restrictions for the avowed purpose and with the practical effect of curtailing the volume of interstate commerce to aid local economic interests.

53.     The Individual Defendants denied Keystone's application in whole or in part on grounds that granting it would have subjected others to competition and taken opportunities needed locally.

54.     The Individual Defendants discriminatory approach was undertaken solely to protect local economic interests such as limitation of competition.  They sought to promote Pennsylvania's economic interest by curtailing or burdening interstate commerce.

55.     The Individual Defendants used their power to protect to regulate gaming in Pennsylvania as a basis for suppressing interstate economic competition.

56.     By the actions described above, the Individual Defendants, acting under color of state law, discriminated against out-of-state entities and interests for the purpose of unlawfully interfering with and regulating the interstate flow of articles of commerce.

57.     The articles of commerce at issue in this matter include, among others, casino patrons and those investments and services that are utilized to offer and participate in gaming activities in various states, including Pennsylvania and New Jersey.

58.     The Individual Defendants, through the conduct described above, have discriminated against, and unduly burdened, interstate commerce in violation of Article I, Section 8 of the United States Constitution.

59.     The actions of the Individual Defendants described above caused Keystone to suffer substantial losses, including the fees, costs and expenses incurred or paid in connection with its application for a license.

WHEREFORE, Keystone demands judgment against each of the Individual Defendants for relief as follows:

(a)   Declaratory judgment, pursuant to 28 U.S.C. § 2201, that the actions of the Individual Defendants in denying Keystone's application for a license were unconstitutional pursuant to the Commerce Clause, Article I, Section 8, of the United States Constitution;

(b)   An award to Keystone and against the Individual Defendants of monetary damages in an amount to be determined at trial;

(c)   An award of additional relief to Keystone that may be ancillary to the award of any of the foregoing relief, including Keystone's reasonable attorneys' fees and expenses to the extent allowed by law or equity, including 42 U.S.C. § 1988; and

(d)   Such other and further relief as this Court deems just and proper.

## COUNT II
### (Against Official Defendants - Commerce Clause)

60.   The foregoing paragraphs 1-49 are incorporated by reference.

61.   The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from state action that violates the Commerce Clause, Article I, Section 8 of the United States Constitution.

62.   If not enjoined by court order, in connection with the proceeding commenced by Keystone now before the PGCB or such further proceedings as are necessary, the Official Defendants will follow their policy of applying the Gaming Act so as to impose restrictions for the avowed purpose and with the practical

effect of curtailing the volume of interstate commerce to aid local economic interests.

63.    If not enjoined by court order, in connection with the proceeding commenced by Keystone now before the PGCB or such further proceedings as are necessary, the Official Defendants will deny Keystone's application in whole or in part on grounds that granting it will subject others to competition and take opportunities needed locally.

64.    If not enjoined by court order, in connection with the proceeding commenced by Keystone now before the PGCB or such further proceedings as are necessary, the Official Defendants will discriminate against Keystone to protect local economic interests such as limitation of competition.  They will again promote Pennsylvania's economic interest by curtailing or burdening interstate commerce.

65.    If not enjoined by court order, in connection with the proceeding commenced by Keystone now before the PGCB or such further proceedings as are necessary, the Official Defendants will use their power under state law to regulate gaming in Pennsylvania as a basis for suppressing interstate economic competition.

66.    Unless restrained by this Court, the Official Defendants, as the PGCB, and acting under color of state law, will continue to discriminate against Keystone based on its affiliation with entities operating casinos in New Jersey such as by

protecting and promoting the licenses previously issued to entities that are not associated or affiliated with casinos located in New Jersey and by denying or taking other adverse action with respect to a reopened application by Keystone for a license.

67.    In the absence of the relief requested herein, Keystone will suffer irreparable harm for which there is no adequate remedy at law in that the Official Defendants, as the PGCB, through continuing application of unconstitutional licensing criteria, will deny, reject or otherwise take adverse action with respect to any application or petition by Keystone filed with the PGCB.

WHEREFORE, Keystone demands judgment against each of the Official Defendants for relief as follows:

(a)    Declaratory judgment, pursuant to 28 U.S.C. § 2201, that a licensing determination made based on consideration of an applicant's affiliation with entities operating casinos in New Jersey violates the Commerce Clause, Article I, Section 8, of the United States Constitution;

(b)    An injunction against ongoing application of unconstitutional licensing criteria in violation of the Commerce Clause, Article I, Section 8 of the United States Constitution;

(c)    An award of additional relief to Keystone that may be ancillary to the award of any of the foregoing relief, including Keystone's reasonable attorneys' fees and expenses to the extent allowed by law or equity, including 42 U.S.C. § 1988; and

(d)    Such other and further relief as this Court deems just and proper.

## COUNT III
### (Against Individual Defendants - Equal Protection)

68.     The foregoing paragraphs 1-49 are incorporated by reference.

69.     The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from state action that violates the Equal Protection Clause, Fourteenth Amendment to the United States Constitution.

70.     By the actions described above, the Individual Defendants, acting under color of state law, placed Keystone in a class of applicants who are affiliated with persons and entities that offer and participate in gaming activities in Atlantic City, New Jersey.

71.     The Individual Defendants, through the conduct described above, discriminated against and denied Keystone the equal protection of the laws and, without legitimate purpose or rational basis for doing so, have provided an unfair and unlawful advantage to the class of applicants who are not affiliated with persons and entities that operate casinos in Atlantic City.

72.     For reasons including those above, the actions of the Individual Defendants violate the Equal Protection Clause, Fourteenth Amendment to the United States Constitution.

73. The actions of the Individual Defendants described above caused Keystone to suffer substantial losses, including the fees, costs and expenses incurred or paid in connection with its application for a license.

WHEREFORE, Keystone demands judgment against each of the Individual Defendants for relief as follows:

(a) Declaratory judgment, pursuant to 28 U.S.C. § 2201, that the actions of the Individual Defendants in denying Keystone's application for a license were unconstitutional pursuant to the Equal Protection Clause, Fourteenth Amendment to the United States Constitution;

(b) An award to Keystone and against the Individual Defendants for monetary damages in an amount to be determined at trial;

(c) An award of additional relief to Keystone that may be ancillary to the award of any of the foregoing relief, including Keystone's reasonable attorneys' fees and expenses to the extent allowed by law or equity, including 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

## COUNT IV
### (Against Official Defendants - Equal Protection)

74. The foregoing paragraphs 1-49 are incorporated by reference.

75. The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from state action that violates the Equal Protection Clause, Fourteenth Amendment to the United States Constitution.

76. Unless restrained by this Court, the Official Defendants, as the PGCB, without legitimate purpose or rational basis for doing so, will continue to

discriminate against Keystone as a member of a class of applicants affiliated with entities operating casinos in Atlantic City, New Jersey, and to otherwise protect and promote the licenses issued to entities that are not associated or affiliated with casinos located in New Jersey.

77.    In the absence of the relief requested herein, Keystone will suffer irreparable harm for which there is no adequate remedy at law in that the Official Defendants, as the PGCB, through continuing unjustifiable discrimination against a class of applicants, of which Keystone is a member, who are affiliated with persons or entities engaged in lawful gambling businesses in Atlantic City, New Jersey, will deny, reject or otherwise take adverse action with respect to any application or petition by Keystone filed with the PGCB.

WHEREFORE, Keystone demands judgment against each of the Defendant Officials for relief as follows:

(a)    Declaratory judgment, pursuant to 28 U.S.C. § 2201, that a licensing determination made based on consideration of an applicant's affiliation with entities operating casinos in New Jersey violates the Equal Protection Clause, Fourteenth Amendment to the United States Constitution;

(b)    An injunction against ongoing application of unconstitutional licensing criteria in violation of the Equal Protection Clause, Fourteenth Amendment to the United States Constitution;

(c)     An award of additional relief to Keystone that may be ancillary to the award of any of the foregoing relief, including Keystone's reasonable attorneys' fees and expenses to the extent allowed by law or equity, including 42 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

## COUNT V
### (Against Official Defendants - Deterrence of Exercise of Rights)

78.     The foregoing paragraphs 1-49 are incorporated by reference.

79.     The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from state actions that violate the Equal Protection and Procedural Due Process Clauses, Fourteenth Amendment to the United States Constitution, as well as those state actions that impede the right to petition the government for redress of harms, as guaranteed by the First Amendment to the United States Constitution.

80.     Section 1308(c) of the Gaming Act, 4 Pa.C.S. § 1308(c), purports to prevent the PGCB from considering an application for a license submitted by a person or entity that is challenging or otherwise seeking to overturn any decision or order of the PGCB approving, denying or conditioning a license to operate slot machines in Pennsylvania.

81.     Section 1308(c) unconstitutionally conditions consideration for a license on an applicant's waiver of rights protected by the First and Fourteenth

Amendments to the United States Constitution, including the right to access the courts and petition for redress of the PGCB's violations of law.

82.     Section 1308(c) unconstitutionally deters entities from exercising their rights to access the courts and to petition for redress for PGCB's violations of law, as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

83.     Section 1308(c) unconstitutionally discriminates against and denies applicants the equal protection of the law by excluding from consideration for a license those applicants that are exercising the constitutional right to seek redress for PGCB's violations of law.

84.     Unless restrained by the Court, the Official Defendants, as the PGCB, will refuse to consider Keystone's reopened application because Keystone is exercising its right to challenge a decision of the PGCB.

85.     In the absence of the relief requested herein, Keystone will suffer irreparable harm for which there is no adequate remedy at law in that the Official Defendants, as the PGCB, through continuing application of Section 1308(c) of the Gaming Act, will deny, reject or otherwise take adverse action with respect to any application or petition by Keystone filed with the PGCB.

WHEREFORE, Keystone demands judgment against each of the Official Defendants for relief as follows:

(a) Declaratory judgment, pursuant to 28 U.S.C. § 2201, that Section 1308(c) of the Gaming Act, 4 Pa.C.S § 1308(c), sets forth an unconstitutional condition and violates the First Amendment and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

(b) An injunction against ongoing application of Section 1308(c) of the Gaming Act, 4 Pa.C.S § 1308(c), as it sets forth an unconstitutional condition and violates the First Amendment and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article 5, Section 9 of the Pennsylvania Constitution.

(c) An award of additional relief to Keystone that may be ancillary to the award of any of the foregoing relief, including Keystone's reasonable attorneys' fees and expenses to the extent allowed by law or equity, including 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

March 18, 2009

s/David R. Overstreet
John P. Krill, Jr.
PA 16287 John.Krill@klgates.com
David R. Overstreet
PA 68950 David.Overstreet@klgates.com
Abram D. Burnett, III
PA 93023 abram.burnett@klgates.com
K&L Gates LLP
17 North Second Street, 18th Floor
Harrisburg, PA 17101-1507
T: 717-231-4500 / F: 717-231-4501
*Counsel for Plaintiff*
*Keystone Redevelopment Partners, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2009, I served a copy of the foregoing document through the court's ECF system, upon the following:

James J. Kutz, Esq.
John W. Dornberger, Esq.
Barbara A. Zemlock, Esq.
Post & Schell, PC
17 North Second Street, 12th Floor
Harrisburg, PA 17101
*Attorneys for Defendants*

R. Douglas Sherman, Esq.
Acting Chief Counsel
Pennsylvania Gaming Control Board
Fifth Floor – Verizon Tower
303 Walnut Street/Strawberry Square
Harrisburg, PA 17101
*Attorneys for Defendants*

Charles J. Hardy, Esq.
Thomas E. Groshens, Esq.
Thomas A. Sprague, Esq.
Richard A. Sprague, Esq.
Sprague & Sprague
Wellington Building, Suite 400
135 South 19th Street
Philadelphia, PA 19103
*Attorneys for proposed Intervenor HSP Gaming*

William H. Lamb, Esq.
Lamb McErlane, PC
24 East Market Street
West Chester, PA 19381
*Attorneys for proposed Intervenor HSP Gaming*

F. Warren Jacoby, Esq.
Stephen A. Cozen, Esq.
Jennifer M. McHugh, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
*Attorneys for Intervenor HSP Gaming*

s/ David R. Overstreet
David R. Overstreet