IN THE SUPREME COURT
OF THE COMMONWEALTH OF PENNSYLVANIA
MIDDLE DISTRICT

RIVERWALK CASINO, LP,  :
         Petitioner  :

    v.  :    Docket No. 27 MM 2007

     :

     :

PENNSYLVANIA GAMING CONTROL BOARD,  :
         Respondent  :

## THE PENNSYLVANIA GAMING CONTROL BOARD'S APPLICATION FOR SPECIAL RELIEF IN THE NATURE OF A MOTION TO REQUIRE THAT PETITIONER POST A BOND TO SECURE THE COMMONWEALTH'S POTENTIAL LOSSES ARISING FROM THE MERITLESS PETITION FOR REVIEW

AND NOW comes the Pennsylvania Gaming Control Board (PGCB), respondent in the appeal of Riverwalk Casino, LP of the grant of the two available Category 2 slot machine licenses in the city of Philadelphia to HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods and the denial of those licenses to three other applicants including Riverwalk Casino, and moves this Honorable Court for special relief pursuant to Rules 1532(a) and 123 of the Pennsylvania Rules of Appellate Procedure, stating in support thereof as follows:

## I.    INTRODUCTION

1.    The Pennsylvania Race Horse Development and Gaming Act (the "Gaming Act") vests the PGCB with exceptionally broad discretion to approve and issue the limited number of slot machine licenses authorized under the Gaming Act. *See* 4 Pa.C.S.A. § 1202(a) ("The board shall be responsible to ensure the integrity of the acquisition and operation of slot machines and

Received In Supreme Court

MAR 1 5 2007

Middle

associated equipment and shall have jurisdiction over every aspect of the authorization and operation of slot machines"); *id.* § 1202(b)(4) ("The board shall have the specific power and duty[,]…[a]t its discretion, to issue, approve, renew, revoke, suspend, condition or deny issuance or renewal of slot machine licenses."); *see also id.* § 1204 (vesting exclusive appellate jurisdiction of the Board's decisions in the Supreme Court and providing that the Supreme Court "shall affirm all final orders, determinations or decisions of the board involving the approval, issuance, denial or conditioning of all licensed entity applications unless it shall find that the board committed an error of law or that the order, determination or decision of the board was arbitrary and there was a capricious disregard of the evidence").

2.     The Act provides at Section 1307 that only two Category 2 licenses can be issued in the city of the First Class which is Philadelphia.

3.     There were five applicants for the two available licenses in Philadelphia: HSP/Sugarhouse Casino; Philadelphia Entertainment and Development Partners/Foxwoods; Riverwalk Casino; Keystone Redevelopment Partners/TrumpStreet; and Pinnacle Entertainment.

4.     Following extensive hearings, the PGCB exercised its discretion under the Act and voted during public meeting on December 20, 2006 to grant the application for the two Category 2 licenses in Philadelphia to HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods and to deny the other three applications.

5.     The PGCB issued a 113 page Adjudication on February 1, 2007 which contained Findings of Fact and Conclusions of Law and discussion setting forth the PGCB's rationale for its decision.

6.     The Board's decision and the underlying statutory scheme embodied in the Gaming Act contemplate prompt implementation of the Board's decision to issue the licenses to

HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods.

7.  The Petition for Review filed by Petitioner Riverwalk Casino on March 3, 2007, (the "Petition"), threatens to cause serious damage to the ability of the HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods projects to move forward and hence the delay associated with the appeal will cause substantial monetary damage to the Commonwealth of Pennsylvania, its citizens and other governmental, civic and social organizations who stand to receive substantial benefits from the revenues to be obtained from the operation of the HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods facilities.

8.  The Petition for Review will delay HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods from opening their new casino facilities in Philadelphia because the licenses cannot be issued until after all appeals are resolved. The delay in the issuance of the licenses resulting from the appeals filed will result in the loss of tens of millions of dollars to the Commonwealth and its citizens arising solely as a result of the mere pendency of Petitioner's Petition for Review, which the PGCB contends is without merit. The money lost due to the delay will not be recovered upon the eventual opening of the casinos.

9.  The revenues to the Commonwealth which will be lost by the delay include monies which would be collected as taxes and assessment on casino gross terminal revenues, which in turn are to be distributed to the Pennsylvania Race Horse Development Fund, the Pennsylvania Gaming Economic Development and Tourism Fund, compulsive problem gaming treatment programs, volunteer fire company grants, local law enforcement grants, funds for counties, school districts and townships, and monies for property tax relief across the Commonwealth. Every day this appeal is pending causes a corresponding delay in the receipt of

these benefits otherwise owed to the Commonwealth, as well as to Pennsylvania's citizens who deserve the property tax reductions this Act was designed to provide.

10.    The court should exercise its discretion to fashion an order granting special relief consistent with the usages and principles of law as required to protect the interests of justice as well as the best interests of the Commonwealth.

## II.    THE STANDARD FOR APPLICATIONS FOR SPECIAL RELIEF

11.    Pennsylvania Rule of Appellate Procedure 1532 governs Applications for Special Relief. The Rule states as follows:

> Special relief. At any time after the filing of a petition for review, the court may, on application, ... grant other interim or special relief required in the interest of justice and consistent with the usages and principles of law.

Pa. R. App. P. 1532(a)

12.    For the reasons set forth below, the PGCB respectfully request the Court order Petitioner to post a bond, which is required in the interest of justice, to secure the potential substantial losses the PGCB and the Commonwealth of Pennsylvania will likely incur as a result of the pendency of Petitioner's meritless Petition for Review.

## III.    SUPERSEDEAS TRADITIONALLY REQUIRES POSTING OF APPEAL BOND

13.    Pursuant to general principals of Pennsylvania law, decisions of a trial court or government unit (such as the Board) are stayed pending review only when, among other things, the petitioner files a bond sufficient in size to secure the losses that may result from the stay if the appeal fails.

14.    This general rule is reiterated in several of Pennsylvania's Rules of Appellate Procedure. For example, Rule 1731(a) provides that an appeal of a money judgment will operate as a supersedeas only upon filing with the lower court of a bond in the amount of 120% of the

judgment. *See* Pa. R. App. P. 1731(a).

15.     Similarly, an appeal not subject to Rule 1731 operates as a supersedeas only upon filing with the lower court of security in an amount the court shall deem just and proper. *See id.* Rule 1733(a), (c); *see also id.* Rule 1733(b) (discussing supersedeas bonds for appeals of orders determining the disposition of tangible property and providing "the amount of the additional security shall be fixed by agreement of the parties, or by the court, at sums only as will secure any damages for the use and detention of the property, interest, the costs of the matter and costs of appeal").

16.     Regarding petitions to review decisions of government units (such as the PGCB), the Rules of Appellate Procedure provide that government unit decisions can be stayed pending disposition of the petition for review consistent with the terms established by the appellate court or judge, "including the filing of security." *See id.* Rule 1781(c).

17.     A supersedeas bond acts as security for the party who prevailed below against losses he or she may wrongfully incur when the petitioner's appeal is unsuccessful. The posting of adequate security is particularly important here where the Petitioner is a corporate entity who is in competition with the successful licensees and who can cause significant financial strain on the successful licensees simply by maintaining and extending an appeal process at little or no cost to itself.

18.     An individual harmed by an unsuccessful appeal is "entitled to a verdict for the damages so alleged and proved, in addition to the costs on appeal as aforesaid, not exceeding, of course, the face of the bond." *Greiger v. U.S. Fidelity & Guaranty Co.,* 121 Pa. Super. 554, 560, 184 A. 464, 467 (Pa. Super. 1936) (discussing appeal bond not involving supersedeas of trial court decision); *see also Burrell Const. & Supply Co. v. Straub,* 440 Pa. Super. 596, 603, 656

A.2d 529, 533 (Pa. Super 1995) (affirming entry of judgment in amount of appeal bond where damages likely exceeded the value of the bond). *But see also Christo v. Tuscany,* 368 Pa. Super. 9, 533 A.2d 461 (Pa. Super. 1987) (holding that damages can be recovered in excess of value of a preliminary injunction bond).

## IV. THE PETITION FOR REVIEW ACTS AS A DE FACTO SUPERSEDEAS WITHOUT THE POSTING OF ADEQUATE SECURITY

19.     On December 20, 2006, the PGCB voted to grant HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods' applications for Category 2 licenses. The decision was set forth in the Adjudication and Order of the PGCB dated February 1, 2007.

20.     Following approval of a license application, the Gaming Act provides that the actual issuance of the license shall not occur until the Board's decision is final, binding and nonappealable. *See* 4 Pa. C.S.A. §1301, *see also id.* § 1103 (definition of issuance).

21.     Specifically, the Gaming Act provides:

Following approval of an application for a slot machine license, the applicant shall provide formal notification to the board as soon as:

> (1)    it fulfills all required conditions for issuance of the license; and

> (2)    the board's decision approving the application is a final, binding, nonappealable determination which is not subject to a pending legal challenge.

Upon receipt of such formal notification and upon conducting any necessary verification, the board shall issue a slot machine license to the applicant.

*Id.* § 1301.

22.     Petitioner filed its Petition for Review on March 2, 2007.

23.    The pendency of the Petition prevents the PGCB from issuing the licenses and causes · HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods to be prohibited from moving forward with their projects due to the uncertainty in the status of the licenses created only by the filing of this appeal until the Court disposes of the appeals.

24.    Thus, Petitioners' Petition for Review operates as a de facto supersedeas of the Board's Order approving HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods' license applications.

25.    Petitioner has not filed a bond or given any type of security to guard the Commonwealth (or HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods for that matter) against the substantial losses likely to result from the delay · in licensing caused merely by the pendency of the Petition for Review.

26.    Principles of equity also favor the bond being posted. Section 1313(c) of the Act and the Board's Regulation at 441.10(a) require that each applicant for a Category 2 slot machine license post and maintain a $50 million bond or letter of credit throughout the period in which the application is on file in order to demonstrate their ability to pay the $50 million slot machine license fee. According to Board regulation 441.10(f)(2)(i), since Riverwalk Casino, LP was denied a license and therefore no longer an applicant, it has obtained release of its bond or letter of credit. Therefore, throughout this appeal process, Riverwalk Casino, LP has virtually no ongoing monetary risk. However, the successful applicants, are required to maintain their $50 million bond or letter of credit throughout the appeal process as neither the Act nor the Board's regulations allow for the bond or letter of credit to lapse until the license fee is paid. This disparity dictates that Riverwalk Casino, LP should be required to post a bond during the

pendency of the appeal to protect the Commonwealth from losses in this appeal, to assure the good faith of the Petitioner in pursuing this appeal and to guard against a meritless appeal being interposed simply to delay the Commonwealth's receipt of gaming benefits.

## V. THE INTERESTS OF JUSTICE REQUIRE POSTING OF A BOND

27.    As stated above, the Board has determined, as it has broad discretion to do, that granting HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods' applications for licenses is in the best interests of the Commonwealth of Pennsylvania. *See* Board's Order.

28.    The Act provides that the PGCB members are to serve in a fiduciary role for the Commonwealth.    See 4 Pa.C.S. §1201(h.1)(h.2). As fiduciaries, the PGCB is required to exercise the care of a reasonably prudent person in protecting the funds and monies owed to the Commonwealth pursuant to operation of the Act. The PGCB, as a prudent person, must seek the posting of a bond pending disposition of the appeals of the Category 2 licenses to protect the Commonwealth's interests in fulfilling the General Assembly's mandate to provide extensive benefits, grants and property tax relief to citizens of the Commonwealth.

29.    Absent the issuance of the approved License, HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods cannot move forward with their financing, construction and opening of its facility, and the "prompt implementation" of the reforms intended by the General Assembly through the enactment of the Gaming Act will not occur. *See* 4 Pa. C.S.A. § 1203 (authorizing promulgation of temporary regulations and waiving ordinary regulatory review processes "in order to facilitate prompt implementation" of the Gaming Act).

30.    Each day the opening of the projects is delayed after March 5, 2007, the

Commonwealth will incur substantial losses and the Commonwealth will forever lose millions of dollars of revenues. *See* Exhibit A, Amsler Declaration. Because the operations of a casino are ongoing, the loss due to the delay in opening will not be recouped once the casinos are permitted to open.

## VI.    THE BOND SHOULD BE OF SUFFICIENT SIZE TO SECURE ALL OF THE COMMONWEALTH'S POTENTIAL LOSSES

31.    When setting the amount of the bond, the Court should err on the high side to ensure the Commonwealth's ability to recover all damages sustained as a result of the filing of the Petition for Review. *Cf. Scanvec Amiable Ltd. v. Chang,* 2002 WL 32341772 at *3, No. 02-6950 (E.D. Pa. Nov. 1, 2002) (discussing preliminary injunction bond requirement and holding "when setting the amount of security, district courts should err on the high side") (citing *Mead Johnson & Co. v. Abbott Laboratories,* 201 F.3d 883, 888 (7th Cir. 2000)). While the Commonwealth theoretically could recover its damages in excess of the amount of the bond, *see Christo v. Tuscany,* 368 Pa. Super. 9, 533 A.2d 461 (Pa. Super. 1987) (holding that damages can be recovered in excess of value of a preliminary injunction bond), on the instant facts, the Commonwealth's potential damages are staggering and, as a practical matter, it is unlikely the Commonwealth would be able to collect damages in excess of the amount secured by a bond.

32.    If HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods are not able to immediately move forward with their licensed projects, due to the pendency of these appeals, the Commonwealth will suffer numerous losses including interest on the $50,000,000 license fees, and up to a 55% share of gross terminal revenues for every day the projects are delayed.

33.    The losses to the Commonwealth to be incurred for each day the licensing of

HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods are delayed are easily calculated with reasonable and substantial accuracy, thereby justifying Petitioner to post a substantial bond.

34. Based on the delay in receipt of the two $50,000,000 licensing fees alone, and calculating interest which the Commonwealth would receive at a current 3 month Treasury Bill rate of approximately 5%, the Commonwealth will lose $13,698 ($6,849 per license) each day the issuance of the two licenses and the projects are delayed. For each 30 days the matters are delayed by this appeal, the loss of interest *without compounding* is $410,940; and $2,465,640 should the license delays occur for 6 months.

35. Further, the loss of the Commonwealth's share of slot machine taxes and assessments that will be expected from the delay in operations caused by this appeal are calculable based upon the estimates of slot machine revenues. HSP/Sugarhouse Casino projects that its operation will generate gross terminal revenues of $465,000 per day. Philadelphia Entertainment and Development Partners/Foxwoods projects that its operation will generate gross terminal revenues of $909,000 per day. These estimates are not substantially dissimilar to those estimates of the Petitioner in this appeal which it submitted to the PGCB in concert with its application for licensure.

36. As set forth in Exhibit A, the Commonwealth's tax and assessment share of these gross terminal revenues pursuant to Sections 1403, 1405 and 1407 are $255,750 for HSP and $499,950 for Foxwoods for a combined $755,700 for every day the project is delayed by this appeal. On a 30 day basis, this amount is $22,671,000, and should the appeal not be completely resolved for 6 months, the loss of gross terminal taxes and assessments would be approximately $136,026,000.

37.     The PGCB suggests that basing a bond upon a 6 month period for finalization of this appeal process would be reasonable under the circumstances and not unduly burdensome for the Petitioner.

38.     Utilizing these numbers, the PGCB submits that the Court should order Petitioner to post an appropriate bond in the amount of at least $138,491,640 (the interest on $50 million fee and 55% taxes and assessments) which represents the minimum terminal value of the losses to the Commonwealth to be experienced upon a six month delay in the licensing and operation of HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods pending complete resolution of this appeal, and to provide that the failure to post this bond within five business days will result in the dismissal of the Petition for Review with prejudice.

## VII.    SPECIAL RELIF IS APPROPRIATE

39.     The Court has discretion to grant special relief consistent with law as required in the interests of justice.

40.     The Board has reviewed an extensive record and determined that it is in the best interests of the Commonwealth to issue the License to HSP/Sugarhouse Casino and Philadelphia Entertainment and Development Partners/Foxwoods.

41.     As discussed above, it is a well-established principal of the law that execution of trial court or government unit decisions is generally stayed only upon the appellant's posting of a bond sufficient to secure the potential damages resulting from an unsuccessful appeal.

42.     Here, under the Gaming Act, Petitioners' appeal operates as a de facto supersedeas and threatens to damage the Commonwealth of Pennsylvania's interests as to be protected by the PGCB members fiduciary relationship to the Commonwealth by delaying the

opening of the Project and, thereby, causing the Commonwealth to forever lose millions of dollars in revenues that would result if the Project is delayed by this appeal.

43.     Requiring that Petitioner post a bond in an amount determined in accordance with paragraphs 32-38 above would secure the Commonwealth's potential losses that may result from the mere pendency of the Petitioner's Petition for Review.

WHEREFORE, for all of the foregoing reason, the PGCB respectfully requests that this Court grant this Application and direct Petitioner to post a bond sufficient to secure the potential losses to the Commonwealth as a result of the pendency of the Petition for Review.

Respectfully submitted,

FRANK T. DONAGHUE
Chief Counsel
PA. ID No. 72561

By:     _____

R. DOUGLAS SHERMAN
Deputy Chief Counsel
Attorney I.D. No. 50092

LINDA S. LLOYD
Assistant Chief Counsel
Attorney I.D. No. 66720

Pennsylvania Gaming Control Board
Office of Chief Counsel
303 Walnut Street, Strawberry Square
Verizon Towers, 5th Floor
Harrisburg, PA 17101-1825
rsherman@state.pa.us
lilloyd@state.pa.us
(717) 346-8300

Dated:  March 15, 2007

12

## DECLARATION OF STACIE AMSLER

I, STACIE AMSLER, hereby declare pursuant to the penalties of 18 Pa.C.S.
§4904 relating to unsworn falsification to authorities, that the following is true and
correct to the best of my knowledge, information and belief:

1.      I am employed as the Director of the Bureau of Fiscal Management for the
Pennsylvania Department of Revenue. I have held this position since November 2004
and was the Acting Director from December 2003 until my appointment as the Director.
In that capacity, my responsibilities include overseeing the daily collection of gaming
taxes and assessments and the distributions of monies according to the provisions of the
Pennsylvania Race Horse Development and Gaming Act (the Act). I therefore am
familiar with the nature of the monies which are distributed to the Commonwealth and
other entities and organizations as a result of the operation of gaming facilities.

2.      On February 1, 2007, the Pennsylvania Gaming Control Board (PGCB) issued
Orders granting slot machine licenses, known as "Category 2" licenses, to applicants in
Philadelphia, Pittsburgh and at revenue-enhanced or tourism locations in the
Commonwealth.

3.      Licensed slot machine operators pay two types of fees to the Commonwealth: a
$50,000,000 license fee under Section 1209(a) of the Act; and taxes and assessments
based upon the daily gross terminal revenues of a gaming facility. Upon collection, these
monies are deposited into various State Funds.

**The $50,000,000 license fee**

4.      Each category 2 licensee is required by the PGCB to remit the $50,000,000
license fee to the Commonwealth following the licensing decision becoming final.



5.     The $50,000,000 license fee received by the Commonwealth for each license is deposited in the State Gaming Fund. The State Gaming Fund is an account within the State Treasury, and upon information, is invested consistent with the Treasury's fiduciary duties to manage the Fund.

6.     The current 3 month Treasury Bill rate is approximately 5%.

7.·     For every day that the $50,000,000 is not deposited in the State Gaming Fund and not invested as a result of the pendency of any appeals preventing a license from becoming final, the Commonwealth is deprived of monies that otherwise would be accruing in those accounts or the opportunity to satisfy other obligations with those funds.

8.     Utilizing the current 3 month Treasury Bill rate of approximately 5%, and not taking the compounding of interest into account, it is estimated that the Commonwealth is foregoing the receipt of approximately $6,849 for every day that the appeal of the license decision is pending and not final.

**Loss of Taxes and Assessments Based Upon Gross Terminal Revenue**

9.     Any delays in the licensing of entities by the Board will also result in the State Gaming Fund not receiving taxes and fees owed to the Commonwealth based upon gross terminal revenue of the licensees.

10.     The primary ongoing funding mechanism of the State Gaming Fund is the 34% slot machine tax provided for in Section 1403(b) of the Act, along with a 4% local share assessment imposed upon each licensee's daily gross terminal revenue from the slot machine operations at the licensee's facility

11.     In addition, under the Act, the Pennsylvania Race Horse Development Fund

receives a gross terminal revenue assessment capped at 12% under Section 1405 of the Act; and the Pennsylvania Gaming and Economic Development and Tourism Fund receives a 5% assessment of gross terminal revenue. Both Funds distribute monies received from the gross terminal revenues to various Commonwealth-based programs and initiatives.

12.     The sum of the taxes and assessments described above may not exceed 55% of the daily gross terminal revenue of each licensee which provides grants, monies and tax relief to the citizens of the Commonwealth and other economic, social and civic causes within the Commonwealth. This revenue will be lost to the Commonwealth for every day that the final issuance of the license is delayed by an appeal.

13.     During the licensing review process, the applicants presented to the PGCB estimates of the gross terminal revenue which they expected from their respective projects. The applicants' projected gross terminal revenue was provided to me to use in determining potential losses of tax and assessments to the Commonwealth that could result from delays in the licensing process.

14.     As presented by the applicants and the PGCB, the gross terminal revenue projections of the successful applicants were as follows:

| Facility | Assumed # of Machines | Applicant Estimate of win per unit | Applicant Estimate of Gross Terminal Revenue |
|---|---|---|---|
| HSP Gaming | 1,500 | $310 | $465,000 |
| Mount Airy | 3,000 | $191 | $573,000 |
| Majestic Star | 3,000 | $280 | $840,000 |
| Sands | 3,000 | $315 | $945,000 |
| Foxwoods | 3,000 | $303 | $909,000 |

15.    The losses to the Commonwealth on a daily basis based upon the above

financial estimates are as follows:

| 55% loss based on Applicant Estimate | |
|---|---|
| HSP Gaming - | $255,750 |
| Mount Airy - | $315,150 |
| Majestic Star - | $462,000 |
| SandsBethworks | $519,750 |
| Foxwoods - | $499,950 |

3/15/07
DATE

*Stacie Amsler*

STACIE AMSLER
Director, Bureau of Fiscal Management
Pennsylvania Department of Revenue

# DECLARATION OF DENYSE MISKIN

I, DENYSE MISKIN hereby declare pursuant to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities, that the following is true and correct:

1. I am employed by the Pennsylvania Gaming Control Board as the Director of the Bureau of Corporate Compliance and Internal Controls. In that capacity, my responsibilities have included acting as a member of the Financial Suitability Task Force which obtained and reviewed certain submissions accompanying applications for Category 1 and 2 slot machine licenses under the Pennsylvania Race Horse Development and Gaming Act.

2. Applicants seeking licensure submitted financial projections to the PGCB's during the Summer and Fall of 2006 leading up to the Board's licensing hearings to demonstrate the projected revenues each applicant's proposed project would generate on a daily per machine basis as well as in terms of gross terminal revenues.

3. "Gross terminal revenues" are defined in Section 1103 of the Act as the total of wagers received by a slot machine minus the total of cash or cash equivalents paid out to patrons, cash paid to purchase annuities to fund prizes payable over a period of time, and any personal property distributed to a patron as the result of playing a slot machine.

4. The gross terminal revenue projections represent the amount of money left over after all gaming payouts upon which taxes and assessments are paid to the Commonwealth.

5. Based upon my position with the PGCB and receipt and review of the applicant's financial-related application materials, I am familiar with the applicants' projected



revenues which would be available upon commencement of operations as the gross terminal revenues.

6.     The projections of the successful applicants were as follows:

| Facility | Assumed # of Machines | Applicant Estimate of Daily Win per Machine | Applicant Estimate of Daily Gross Terminal Revenues |
|---|---|---|---|
| HSP Gaming | 1,500 | $310 | $465,000 |
| Mount Airy | 3,000 | $191 | $573,000 |
| Majestic Star | 3,000 | $280 | $840,000 |
| Sands | 3,000 | $315 | $945,000 |
| Foxwoods | 3,000 | $303 | $909,000 |

7.     Although some applicants proposed eventually expanding beyond the 3,000 machines listed above, those additional machines are not included in the determination of Gross Terminal Revenues above because the statute limits the facility at opening to 3,000 machines and requires Board approval to expand by up to 2,000 machines at least six months after commencement of operations.  Likewise, HSP Gaming projects only 1,500 machines at opening so that number of machines was factored above.

3/15/2007
DATE

DENYSE MISKIN
Director, Bureau of Corporate Compliance
and Internal Controls

IN THE SUPREME COURT
OF THE COMMONWEALTH OF PENNSYLVANIA
MIDDLE DISTRICT

RIVERWALK CASINO, LP,             :

             Petitioner             :

      v.                                :       Docket No. 27 MM 2007

                                       :

                                       :

PENNSYLVANIA GAMING CONTROL BOARD, :

             Respondent           :

## CERTIFICATE OF SERVICE

I, R. Douglas Sherman, Esquire, hereby certify that I caused a true and correct copy of

the foregoing **PGCB's APPLICATION FOR SPECIAL RELIEF IN THE NATURE OF A**

**MOTION TO REQUIRE THAT PETITIONER POST A BOND TO SECURE THE**

**COMMONWEALTH'S POTENTIAL LOSSES ARISING FROM THE IMPROPER**

**PETITION** to be served upon the following counsel of record via First Class United States Mail,

postage prepaid, addressed as follows:

Gregory P. Miller
Miller, Alfano & Raspanti, P.C.
1818 Market Street, Suite 3402
Philadelphia, PA 19103
*Attorneys for Riverwalk Casino, LP*

Stephen A. Cozen, Esquire
F. Warren Jacoby, Esquire
Jennifer M. McHugh, Esquire
Cozen O' Conner
1900 Market Street, Suite 1915
Philadelphia, PA 19102
*Attorneys for HSP Gaming, LP*

Richard A. Sprague, Esquire
Charles J. Hardy, Esquire
Sprague & Sprague
The Wellington Building, Suite 400
135 South 19th Street
Philadelphia, PA 19103-4909
*Attorneys for HSP Gaming, LP*

John Donnelly, Esquire
Levine, Staller, Sklar, Chan, Brown
& Donnelly
3030 Atlantic Avenue
Atlantic City, NJ 08401
*Attorneys for HSP Gaming, LP*

William H. Lamb, Esquire
Scot R. Withers, Esquire
Lamb McErlane, PC
24 East Market Street, P.O Box 565
West Chester, PA 19381-0565
*Attorneys for HSP Gaming, LP*

Stephen D. Schrier, Esquire
Obermayer, Rebmann, Maxwell
& Hippel, LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
*Attorneys for Philadelphia Entertainment &
Development Partners*

Michael K. Coran, Esquire
Glenn A. Weiner, Esquire
Joseph P. Bradica, Esquire
Klehr, Harrison, Harvey, Branzburg
& Ellers, LLP
260 South Broad Street
Philadelphia, PA 19102-5002
*Attorneys for Philadelphia Entertainment &
Development Partners*

Date: March 15, 2007

R. Douglas Sherman

IN THE SUPREME COURT
OF THE COMMONWEALTH OF PENNSYLVANIA
MIDDLE DISTRICT

RIVERWALK CASINO, LP,          :
       Petitioner         :

    v.                   :   Docket No. 27 MM 2007
                             :

                             :

PENNSYLVANIA GAMING CONTROL BOARD, :
       Respondent      :

## ORDER

AND NOW, this _____ day of _____, 2007, upon consideration of Intervenor's Application for Special Relief, said Application is hereby GRANTED and Petitioner are directed to post a bond in the amount of $138,491,640. Failure to post bond in such amount within five (5) business days of the date of this Order, will result in the immediate dismissal of the Petition with prejudice.

_____
                                    , J.